**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| WENDY STIDAM<br>on behalf of Plaintiff and the class members<br>described below, | )<br>)<br>) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| RIGHT NOW LOANS, also known as<br>RIGHT NOW LOANS LENDING;<br>GOLD MOUNTAIN FUND;<br>STANLEY CHAO;<br>ARB RISK MANAGEMENT, LLC;<br>ARB RISK MANAGEMENT HOLDINGS, LLC;<br>and JOHN DOES 1-20, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

1.      Plaintiff, Wendy Stidam, brings this action to secure redress from predatory and

unlawful loans (such as Exhibit A). The loans are made in the name of Defendant Right Now Loans,

also known as Right Now Loans Lending ("Right Now Loans"), via the website

www.rightnowloan.com.

2.      Right Now Loans purports to be a "subsidiary of Sulfur Bank Rancheria Enterprises,

an economic development arm and instrumentality wholly owned and controlled by the Elem Indian

Colony of Pomo Indians ('Tribe'), a federally recognized Indian tribe."

3.      In fact, the lending operation is conducted by Stanley Chao, a non-member of the

Tribe, and two companies he controls, ARB Risk Management, LLC and ARB Risk Management

Holdings, LLC.  Funds used to make the loans are routed through Defendant Gold Mountain Fund.

 Others involved in the making and collection of the loans are named as John Does 1-20.

4.      Plaintiff alleges violations of the rate limitations of the Indiana Uniform Consumer

Credit Code (Count I), and violations of the Racketeer Influenced and Corrupt Organizations Act

(RICO), 18 U.S.C. §1964 (Counts II-III), and violations of the Electronic Funds Transfer Act,  15

U.S.C. §1693 et seq. (Count IV).

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction under 28 U.S.C. §1331, 28 U.S.C.

§1332(d), 18 U.S.C. §1964, 28 U.S.C. §1337, 28 U.S.C. §1367, and 15 U.S.C. §1693m.  The amount

in controversy, on a classwide basis, exceeds $5 million.  There are more than 100 class members.

The parties are of diverse citizenship, described below.

6.      This Court has personal jurisdiction over Defendants because they:

a.      Knowingly participated in the making and collection of unlawful loans to
        Indiana residents. In similar actions against purported "tribal" lenders, courts
        have held that personal jurisdiction over the persons involved in making the
        loans exists in the state where the borrower obtained a loan via the Internet,
        and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*,
        5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D.
        Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d
        Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would
        have been sufficient to subject [the tribal entity] to personal jurisdiction in
        Vermont" for purposes of claims for violations of state and federal law,
        including state usury laws and RICO, where tribal entity operated a website
        that advertised loans in Vermont, sent emails and loan applications to
        Vermont consumers and transferred loan principal to consumers' Vermont
        bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS
        58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue
        Dart Ventures,* 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1,
        2021).

b.      Selected which states to offer loans in, thereby targeting those states. *Illinois v.
        Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

2

7.      Venue is proper because acts to obtain and collect the loans impacted Plaintiff in this District.

8.      Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

9.      Plaintiff Wendy Stidam is a citizen of Indiana who resides in Camby, Indiana.

10.     Defendant  Right Now Loans is an entity of unknown organization which issues 700%+ loans through the website www.rightnowloan.com.

11.     Right Now Loans uses the addresses:

      a.      P.O. Box 4102, Clearlake, CA 95422; and

      b.      14855 Lakeshore Drive, Clearlake, CA 95422-8163.

12.     The website www.rightnowloan.com offers loans at annual percentage rates of 700% and higher.

13.      Right Now Loans claims in its loan agreements to be "a subsidiary of Sulfur Bank Rancheria Enterprises, an economic development arm and instrumentality wholly owned and controlled by the Elem Indian Colony of Pomo Indians ('Tribe'), a federally recognized Indian tribe." (Exhibit A, page 2) Its website (Exhibit B, page 3) states that "Right Now Loans Lending is a subsidiary of SBR Enterprises, a wholly owned economic arm and instrumentality of a Native American entity formed under the laws of and operated by the Elem Indian Colony of Pomo Indians (the 'Tribe'), a federally recognized sovereign American Indian Tribe located within the United States."

14.    Many of the Right Now Loans loans are made to Indiana residents, including Plaintiff.

15.    These residents have received funds via ACH transfers into bank accounts located in Indiana. The loans also provide for repayment via ACH transfers.

16.    The Right Now Loans website states that "Credit products obtained through this website are not available to residents of all states and state availability may change from time to time without notice. Currently, residents of Alabama, Arkansas, Connecticut, District of Columbia, Florida, Georgia, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, South Dakota, Vermont, Virginia, West Virginia are not eligible to receive a loan from Right Now Loans." (Exhibit B, page 4)

17.    The reason why Right Now Loans did not lend to persons in the listed states is because state authorities or private parties in those jurisdictions aggressively enforce usury laws.

18.    Right Now Loans thus affirmatively sought out Indiana residents for its loans.

19.    Defendant Stanley Chao is a natural person and citizen of Florida who may be found at 10060 Hyperion Lane, Orlando, Florida 32836 or 10443 Los Feliz Drive, Orlando, Florida 32836.

20.    Defendant Chao is the beneficial owner of and operates many online lending websites, including www.rightnowloan.com.

21.    Defendant ARB Risk Management, LLC is a limited liability company organized under Delaware law. Its registered agent and office is Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, DE 19958.

22.    Defendant ARB Risk Management Holdings, LLC, is a limited liability company organized under Delaware law. Its registered agent and office is Harvard Business Services, Inc., 16192 Coastal Hwy., Lewes, DE 19958.

23.    Defendant Chao owns and controls ARB Risk Management, LLC and ARB Risk Management Holdings, LLC.

4

24.     On information and belief, Chao has near-total control over the Right Now Loans lending business.

25.     At no time has Chao or any of his websites or entities held any type of consumer lending license from the state of Indiana.

26.     At no time has Chao or any of his websites or entities held a bank or credit union charter.

27.     Defendant Gold Mountain Fund is an entity of unknown organization that uses the addresses:

       a.     1400 N. Dutton Ave., Santa Rosa, CA 95401-4657;

       b.     P.O. Box 757, Lower Lake, CA 95457-0757.

28.     On information and belief, Gold Mountain Fund furnishes the funds used to make loans through www.rightnowloan.com.

29.     In return, Gold Mountain Fund has recorded a security interest using form UCC-1 in all assets, funds, and receivables of Right Now Loans, also known as Right Now Loans Lending. (Exhibits C-D)

30.     Defendants John Does Nos. 1-20 are other natural persons and entities who were involved in the lending activities alleged herein.

## FACTS – GENERAL

31.     Defendant Chao is a businessman who has owned and controlled a number of high-interest online loan websites, including www.rightnowloan.com. Others include FirstLoan.com, InboxLoan.com, and CometLoans.com.

32.     All of these websites purported to be owned and operated by tiny, remote, economically impoverished Native American tribes.

33.     Right Now Loans is purportedly owned and operated by the Elem Indian Colony of Pomo Indians (the "Tribe").

34.     The Tribe is a group of Pomo Indians based near Clearlake, California.

35.     The Tribe has marginal economic activities due to its small size (several hundred members at most), remote location, and lack of natural resources. It is not capable of financing a lending operation on its own.

36.     Despite claims that the Tribe owns Right Now Loans, the true beneficial owners are Chao, his companies, and his non-tribal investors.

37.     Chao, his companies, and his non-tribal investors manage, underwrite, collect, and profit from the lending operation.

38.     Chao takes advantage of these tribes' desperation by offering to pay them modest amounts in exchange for their claiming ownership of his illegal payday lending operations, enabling Chao to assert that the loans are being made by the tribes themselves.

39.     On information and belief, the Tribe receives less than 5% of loan revenues for being the straw owner of the website and, more importantly, providing a veil of sovereign immunity.

40.     Such arrangements are referred to as "rent-a-tribe" schemes.

41.     Through such schemes, non-tribal payday lenders such as Chao attempt to avoid the restrictions of state and federal laws which would otherwise prohibit usurious loans. They do this by issuing loans in the name of a Native American tribal business entity that purports to be shielded from state and federal law via tribal sovereign immunity.

42.     In reality, the tribal lending entity is a mere "front" for an illegal lending scheme. All substantive aspects of the payday lending operation–funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections–are performed by individuals and entities that are unaffiliated with the Native American tribe. In exchange for the use of the tribe's name, those operating the payday lending scheme pay the cooperating tribe a fraction of the revenues generated, almost always in the single digits.

43.     Chao also owns a number of other entities that are related to "tribal" lending, including:

a.     ARB Call Facilities, Inc., which provides call center services for Chao's payday lenders and other entities, with call centers in Costa Rica, the Philippines, Egypt, and other locations. Chao has held himself out as President of ARB.

b.     Sabre Analysis, LLC, which claims to be a "portfolio servicing company specializing" in "Data Analytics, Lead Purchase Strategy, Collections Strategies (and) Reporting."

c.     Apex Servicing, which is an entity of unknown organization which collects loans issued by payday lending websites beneficially owned by Chao. Apex Servicing has a website (https://www.apexservicing.com/), on which it states that "Apex Servicing is a Tribal licensed business and a subsidiary agency of Wakpamni Lake Community Corporation, which was created and exists as an arm and subdivision of the Oglala Sioux Tribe of the Pine Ridge Indian Reservation (The "Tribe"), a federally recognized and sovereign Indian Tribe." (Exhibit E, page 2) The principal place of business and office of Apex Servicing is at #1 Wakpamni Lake Housing, Batesland, South Dakota 57716, which is located on the Oglala Sioux Reservation."

44.     Chao's entities provide lead generation, marketing, funding, underwriting, payment processing, and collection with respect to the loans made via www.rightnowloans.com, from locations not on land belonging to any tribe.

## SOVEREIGN IMMUNITY AS A DEFENSE TO STATE USURY LAWS

45.     An entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

46.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the

entities." *Breakthrough* at 1183, 1187-88.

47.    An entity that "actually operates to enrich primarily persons outside the tribe or only a handful of tribal leaders" shows that it is not entitled to immunity. *People ex rel. Owen v. Miami Nation Enterprises*, 2 Cal. 5th 222, 211 Cal. Rptr. 3d 837, 386 P.3d 357 (2016).

48.    These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

49.    Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

50.    Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

51.    Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## **LOANS TO PLAINTIFF**

52.    On April 2, 2024, Right Now Loans made a $1,200 loan to Plaintiff Wendy Stidam at an annual percentage rate of 727.99%. (Exhibit A)

53.    The loan agreements is a standard form document.

54.    The loan was made for personal purposes.

55.    The principal amount was transferred to Plaintiff's bank account in  Indiana via ACH.

56.    The loan was made entirely via Internet.

57.    The loan was to be repaid via ACH.

58.    Plaintiff made payments on the loans.

59.    Right Now Loans's lending does not actually occur on the Tribe's reservation.

60.    A significant majority of the transaction occurs within the State of Indiana–applying for the loan, as well as receiving and collecting the funds.

61.    The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

62.    Plaintiff has never set foot on the Elem Tribe's land in California.

63.    Loans to Indiana residents made in the same manner as the loan to Plaintiff are governed by the laws of the State of Indiana.

64.    Defendant Chao is responsible for orchestrating the lending scheme pursuant to which Right Now Loans lent money to Plaintiff and other Indiana residents.

## INDIANA REGULATION OF LENDING

65.    The Indiana Uniform Consumer Credit Code, Ind. Code § 24-4.5-3-201, establishes a maximum loan finance charge of 36% per annum for consumer loans other than supervised loans. It provides:

(1) Except as provided in subsections (7) and (9), with respect to a consumer loan, other

than a supervised loan (as defined in section 501 [IC 24-4.5-3-501] of this chapter), a lender may contract for a loan finance charge, calculated according to the actuarial method, not exceeding twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter). . . .

66.     With respect to supervised loans, the Indiana Uniform Consumer Credit Code, Ind.

Code § 24-4.5-3-508, provides:

Loan finance charge for supervised loans.

(1) With respect to a supervised loan, including a loan pursuant to a revolving loan account, a supervised lender may contract for and receive a loan finance charge not exceeding that permitted by this section.

(2) The loan finance charge, calculated according to the actuarial method, may not exceed the equivalent of the greater of:

   (a) the total of:

      (i) thirty-six percent (36%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter) which is two thousand dollars ($2,000) or less;

      (ii) twenty-one percent (21%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than two thousand dollars ($2,000) but does not exceed four thousand dollars ($4,000); and

      (iii) fifteen percent (15%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than four thousand dollars ($4,000); or

   (b) twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) of this chapter). . . .

67.     There is also a provision for small loans, Ind. Code § 24-4.5-7-101 *et seq.*, but it does not authorize Defendants' rates and requires that small loans conform to other requirements that Defendants' loans do not comply with.

68.     Ind. Code. § 24-4.5-7-201, "Limitations on finance charges," provides:

(1) Finance charges on the first two hundred fifty dollars ($250) of a small loan are limited to fifteen percent (15%) of the principal.

(2) Finance charges on the amount of a small loan greater than two hundred fifty dollars ($250) and less than or equal to four hundred dollars ($400) are limited to thirteen percent (13%) of the amount over two hundred fifty dollars ($250) and less than or equal to four hundred dollars ($400).

10

(3) Finance charges on the amount of the small loan greater than four hundred dollars ($400) and less than or equal to five hundred fifty dollars ($550) are limited to ten percent (10%) of the amount over four hundred dollars ($400) and less than or equal to five hundred fifty dollars ($550).

(4) The amount of five hundred fifty dollars ($550) in subsection (3) is subject to change under the provisions on adjustment of dollar amounts (IC 24-4.5-1-106). However, notwithstanding IC 24-4.5-1-106(1), the Reference Base Index to be used under this subsection is the Index for October 2006.

69.     The amount of finance charge provided for in <u>Exhibit A</u> is more than double that permitted in Indiana under any provision.

70.     Ind. Code § 24-4.5-1-201, "Territorial application," provides:

(1) Except as otherwise provided in this section, this article applies to sales, leases, and loans made in this state and to modifications, including refinancings, consolidations, and deferrals, made in this state, of sales, leases, and loans, wherever made. For purposes of this article, the following apply: . . .

> (c) A loan or modification of a loan agreement is made in this state if a writing signed by the debtor and evidencing the debt is received by the lender or a person acting on behalf of the lender in this state.

> (d) Except as provided in subdivisions (e) and (f), a sale, lease, or loan transaction occurs in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction with a creditor or a person acting on behalf of the creditor in another state and the creditor or the person acting on behalf of the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or electronic means.

> (e) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction secured by an interest in land located outside Indiana.

> (f) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction at a creditor's place of business in another state.

For purposes of subdivisions (a) through (c), an offer is received by a creditor or a person acting on behalf of the creditor in Indiana if the offer is physically delivered, or otherwise transmitted or communicated, to a person who has actual or apparent authority to act for the creditor or the person acting on behalf of the creditor in Indiana, regardless of whether approval, acceptance, or ratification by any other agent or representative of the creditor or the person acting on behalf of the creditor in another state is necessary to give legal consequence to the consumer credit transaction. . . .

(5) Notwithstanding other provisions of this section:

(a) except as provided in subsection (2), this article does not apply if the buyer, lessee, or debtor is not a resident of this state at the time of a credit transaction and the parties then agree that the law of the buyer's, lessee's, or debtor's residence applies; and

(b) this article applies if the buyer, lessee, or debtor is a resident of this state at the time of a credit transaction and the parties then agree that the law of this state applies.

(6) Except as provided in subsection (5), the following agreements by a buyer, lessee, or debtor are invalid with respect to consumer credit sales, consumer leases, consumer loans, or modifications thereof, to which this article applies:

(a) An agreement that the law of another state shall apply.

(b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state.

(c) An agreement that fixes venue. . . .

(8) If a creditor or a person acting on behalf of the creditor has violated the provisions of this article that apply to the authority to make consumer loans (IC 24.4.5-3-502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge, as set forth in IC 24-4.5-5-202.

71.     Ind. Code § 24.4.5-5-202, "Effect of violations on rights of parties," provides:

. . .  (3) A debtor is not obligated to pay a charge in excess of that allowed by this Article, and ***if the debtor has paid an excess charge the debtor has a right to a refund***. A refund may be made by reducing the debtor's obligation by the amount of the excess charge. If the debtor has paid an amount in excess of the lawful obligation under the agreement, the debtor may recover the excess amount from the person who made the excess charge or from an assignee of that person's rights who undertakes direct collection of payments from or enforcement of rights against debtors arising from the debt.

(4) ***If a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand, the debtor may recover from that person a penalty in an amount determined by a court not exceeding the greater of either the amount of the credit service or loan finance charge or ten (10) times the amount of the excess charge. If the creditor has made an excess charge in deliberate violation of or in reckless disregard for this Article, the penalty may be recovered even though the creditor has refunded the excess charge.*** No penalty pursuant to this subsection may be recovered if a court has ordered a similar penalty assessed against the same person in a civil action by the department (IC 24-4.5-6-113). With respect to excess charges arising from sales made pursuant to revolving charge accounts or from loans made pursuant to revolving loan accounts, no action pursuant to this subsection may be brought more than two (2) years after the time the excess charge was made. With respect to excess charges arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made. . . .

(7) If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error, no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected.

(8) In any case in which it is found that a creditor has violated this Article, the court may award **reasonable attorney's fees** incurred by the debtor. . . . (Emphasis added)

72.     Defendants have been warned by state authorities that their lending operations are illegal. E.g., Washington Department of Financial Institutions notices. (Exhibits F-G)

73.     The excessive interest charges imposed by Defendants were willful.

### COUNT I – INDIANA UNIFORM CONSUMER CREDIT CODE

74.     Plaintiff incorporates paragraphs 1-73.

75.     This claim is against all Defendants.

76.     Because the loan made to Plaintiff violated the rate limits set by Indiana law, and the violations were intentional, Plaintiff and other borrowers are entitled to ten (10) times the amount of the excess charges.

### CLASS ALLEGATIONS

77.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

78.     The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made via www.rightnowloan.com  at more than 36% interest (all of its loans qualify) (c) on or after a date two years prior to the filing of this action.

79.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

80.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

81.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant

common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

82.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

83.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

84.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.     Individual actions are not economically feasible; and

    b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.     Statutory damages;

    ii.     Attorneys' fees, expenses and costs; and

    iii.     Such other or further relief as is appropriate.

## COUNT II – RICO

85.     Plaintiff incorporates paragraphs 1-73.

86.     This claim is against Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund, and John Does 1-20, who are the RICO "persons."

87.     All loans made via www.rightnowloan.com to Indiana residents are (a) unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury and (b) were incurred in connection with the business of lending money at a rate usurious under Indiana law, where (c) the usurious rate is at least twice the enforceable rate (36%).

88.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

89.     Right Now Loans is an enterprise affecting interstate commerce, in that it is located outside of Indiana and makes loans to Indiana residents via the Internet.

90.     Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund and John Does 1-20 are associated with this enterprise.

91.     Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund, and John Does 1-20 conducted or participated in the conduct of the affairs of Right Now Loans through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

92.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

93.     Plaintiff brings this claim on behalf of a class.

94.     The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made via www.rightnowloan.com at more than 36% interest (all of its loans qualify) (c) which loan was made on or after a date four years prior to the filing of suit.

95.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

96.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a.      Whether the loans at issue are "unlawful debts" as defined in RICO;

b.      Whether Right Now Loans is an "enterprise;"

c.      Whether Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund, and John Does 1-20 are associated with Right Now Loans; and

d.      Whether Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund, and John Does 1-20 conducted or participated in the affairs of Right Now Loans through a

pattern of making and collecting unlawful loans.

97.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

98.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

99.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible; and

      b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund, and John Does 1-20 for:

      i.     Treble damages;

      ii.     Attorney's fees, litigation expenses and costs of suit; and

      iii.     Such other or further relief as the Court deems proper.

## COUNT III – RICO

100.     Plaintiff incorporates paragraphs 1-73.

101.     This claim is against Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund, and John Does 1-20,  who are the RICO "persons."

102.     All loans made via www.rightnowloan.com to Indiana residents are (a) unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Indiana law, where (c) the usurious rate is at least twice the enforceable rate (36%).

103.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

104.     Right Now Loans is an enterprise affecting interstate commerce, in that it is located outside of Indiana and makes loans to Indiana residents via the Internet.

105.    Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund, and John Does 1-20 are associated with this enterprise.

106.    Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund and John Does 1-20 agreed and conspired to conduct the affairs of Right Now Loans through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(d).

107.    Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

108.    Plaintiff brings this claim on behalf of a class.

109.    The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made via www.rightnowloan.com  at more than 36% interest (all of its loans qualify) (c) which loan was made on or after a date four years prior to the filing of suit.

110.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

111.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a.    Whether the loans at issue are "unlawful debts" as defined in RICO;

b.    Whether Right Now Loans is an "enterprise;" and

c.    Whether Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund, and John Does 1-20 agreed and conspired to make and collect unlawful loans via www.rightnowloan.com.

112.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

113.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

114.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible; and

    b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants Chao, ARB Risk Management, LLC, ARB Risk Management Holdings, LLC, Gold Mountain Fund, and John Does 1-20  for:

    i.    Treble damages;

    ii.    Attorneys' fees, litigation expenses and costs of suit; and

    iii.    Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (IL ARDC 0712094)
Dulijaza (Julie) Clark (IL ARDC 6273353)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
Dedelman@edcombs.com
Jclark@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

_/s/ Daniel A. Edelman_
Daniel A. Edelman

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein,  any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to her. These materials are likely relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

*/s/ Daniel A. Edelman*
Daniel A. Edelman